IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| FITZGERALD WALTON, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. AW-13-428 |
| WELLS FARGO BANK, N.A., *et al.* | * |
| Defendants. | * |

**MEMORANDUM OPINION**

Pending before the Court are Defendants' Motion to Dismiss for failure to state a claim, Doc. No. 10, and Plaintiffs' Motion for Leave to Amend, Doc. No. 13. The Court has reviewed the motion papers and concludes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2011). For the reasons discussed below, Defendants' Motion to Dismiss will be **GRANTED-IN-PART** and Plaintiffs' Motion for Leave to Amend will be **GRANTED-IN-PART**.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Fitzgerald and Annie Walton filed this action against Defendants Wells Fargo Bank, N.A. and Wells Fargo Financial Leasing, Inc. (hereinafter, "Defendants" or "Wells Fargo") on February 7, 2013. Generally, Plaintiffs "seek redress for the predatory lending practices of Wells Fargo and various mortgage companies that have consistently taken advantage of their status as African Americans in Prince George's County and have specifically given them subprime loans knowing that the loans would default and that the Waltons could qualify for more traditional rates." Doc. No. 1 at 1. For example, Plaintiffs claim that they are victims of Defendants' reverse redlining strategy, that they were steered into loan products that Defendants

1

knew would result in default, and that they were targeted as African-Americans and because they lived in an African-American neighborhood, where the rate of default has been disproportionately high and the defaults have occurred faster than in other neighborhoods.

Plaintiffs also make the following specific allegations with respect to the loan underlying their causes of action. Plaintiffs obtained the loan for their Fort Washington, Maryland property from World Savings Bank on or about May 4, 2005. *Id.* ¶¶ 8, 48. According to the Waltons, the loan had a "teaser rate" of 5.73% which was changed in June 2005 to a rate of 11.95%. *Id.* ¶¶ 16, 48. The Waltons' mortgage payment initially was $2,403.12, but with the higher rate their payment is $3,722.86. *Id.* ¶ 48. In obtaining the loan, Plaintiffs were responding to a radio campaign advertising a 1% loan product. *Id.* ¶ 29. Plaintiffs were targeted for and given the subprime loan despite the fact that they had a strong credit score of 700. *Id.* ¶ 46. Defendant Wells Fargo Bank acquired this subprime loan from World Savings Bank on or around 2008 when it acquired Wachovia Corporation, which was the parent company of World Savings Bank. *Id.* at 2.

The Waltons have attempted to contact Wells Fargo to modify their loan, but "with no reasonable outcome." *Id.* at 2. The Waltons submitted necessary documents on or about February 12, 2012, but to date, Wells Fargo has either not responded or has consistently informed the Waltons that their application for modification is under review or missing certain documents. *Id.* In other words, Defendants have "refused to professionally communicate with the Waltons with respect to their mortgage loan." *Id.* ¶ 42. Plaintiffs now seek injunctive relief and damages from Defendants based on the allegedly discriminatory conduct and the pending foreclosures on their loan.

Defendants move to dismiss on the grounds that all claims are barred by statutes of limitations. Defendants also move to dismiss Plaintiffs' state law claim on the grounds that Plaintiffs have failed to plead a plausible claim for relief. Plaintiffs oppose Defendants' Motion, and request leave to amend in the event the Court finds deficiencies in the Complaint.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal

conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

Plaintiffs allege three causes of action against Defendants: (1) violations of the federal Fair Housing Act (FHA), 42 U.S.C. §§ 3604, 3605; (2) violations of the Maryland Consumer Protection Act (MCPA), MD. CODE, COM. LAW §§ 13-301 *et seq.*, for unfair or deceptive trade practices; and (3) violations of the federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691 *et seq.* The Court will first address Plaintiffs' federal causes of action, and then proceed to their claims under the MCPA.

#### A. Fair Housing Act

Plaintiffs cite two sections of the FHA in their Complaint: § 3604, which applies to discrimination in the sale or rental of housing, and § 3605, which applies to discrimination in residential real-estate transactions. *See* 42 U.S.C. §§ 3604, 3605. In relevant part, § 3604 makes it unlawful:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
>
> (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling

> that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. §§ 3604(a)-(c).[1]  Section 3605 provides:

> It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

*Id.* § 3605(a). "To prove a prima facie case of discrimination under the FHA, [plaintiffs have] to demonstrate that the housing action or practice being challenged was either motivated by a discriminatory purpose or had a discriminatory impact." *Greengael, LC v. Board of Supervisors of Culpeper Cnty., Va.*, 313 F. App'x 577, 581 (4th Cir. 2008) (citing *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 986 (4th Cir. 1984)).

Plaintiffs' Complaint focuses on Defendants' allegedly discriminatory conduct in targeting African-Americans, including the Waltons, for subprime loans that they knew would result in default. The FHA provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). The discovery rule, which allows a claim to accrue when the litigant first knows or with due diligence should know the facts that will form the basis for a cause of action, does not apply to the unambiguous language of the FHA's statute of limitations provision. *See, e.g.*, *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC 10-3517, 2011 WL 3476994, at *8 (D. Md. Aug. 8, 2011); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 509 (E.D. Va. 2002). Plaintiffs obtained this allegedly predatory loan in May 2005, however, meaning that the

---

[1] Courts have noted that § 3604 may apply to loans made in connection with the sale of a dwelling. *See, e.g.*, *Eva v. Midwest Nat'l Mortg. Bank, Inc.*, 143 F. Supp. 2d 862, 883 (N.D. Ohio 2001).

statute of limitations ran on this claim in or about May 2007.  *See Stokes v. JPMorgan Chase Bank, N.A.*, No. JFM 11-cv-2620, 2012 WL 527600, at *7 (D. Md. Feb. 16, 2012).[2]

Plaintiffs attempt to save their FHA claims by arguing that Defendants' violations have been continuing in nature, and are therefore timely by application of the continuing violation doctrine.  Plaintiffs principally rely on *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 (1982), where African-American plaintiffs brought claims against a defendant realty company alleging that the company falsely informed them about apartment availability on multiple occasions.  Most of these occasions occurred beyond the relevant statute of limitations, but one occasion occurred within the statute and was therefore not time-barred.  *Id.* at 380.  The Court ruled that on a continuing violation theory, all of the claims survived because at least one occurred within the limitations period.  *Id.* at 380-81.  In *Stokes*, Judge Motz rejected application of the continuing violations doctrine where the plaintiff's claims were based on a number of subprime loans, none of which closed within the FHA statute of limitations period.  2012 WL 527600, at *8.  Judge Motz further noted the distinctions between *Havens* and the case before him:

> [T]he allegations that five separate and independent defendants engaged in discrete, discriminatory lending transactions with Stokes are easily distinguished from the "continuing violation" in *Havens,* where a single defendant discriminated against multiple plaintiffs. The continuing violation doctrine as expressed in *Havens* is therefore inapplicable and does not revive Stokes's claims.

*Id.*; *see also Grimes v. Fremont Gen. Corp.,* 785 F.Supp.2d 269, 292 (S.D.N.Y. 2011) ("[C]ourts that have found a continuing violation of the FHA have done so in cases involving multiple plaintiffs alleging multiple, specific, and ongoing acts of discrimination, on specific dates, as opposed to general assertions that the defendants engaged in discriminatory practices . . . .

---

[2] Even if the discovery rule did apply to Plaintiffs' FHA claims, they would face "a decidedly uphill battle." *Coulibaly*, 2011 WL 3476994, at *9.  Plaintiffs indicate in their Complaint that they were aware of the harm they suffered as a result of Defendants' alleged deception in June 2005.  Doc. No. 1 ¶ 48.

6

Conversely, vague or conclusory claims regularly meet dismissal.").

The only occurrence Plaintiffs identify within the statute of limitations period is that they attempted to modify their loan in February 2012, and that Wells Fargo has either failed to respond or has informed them that their application is under review or missing documents. Doc. No. 1 at 2. In apparent connection with the attempted loan modification, Plaintiffs also allege that Defendants have "refused to professionally communicate" with them. *Id.* ¶ 42. The alleged refusals to grant a request for a loan modification or to communicate are allegations distinct from the origination of the loan and the reverse redlining and predatory lending that underlie Plaintiffs' Complaint, and are not evidence of continuing, unlawful practice. *See Grimes*, 785 F. Supp. 2d at 291-92 ("The continuing violation doctrine applies when a plaintiff challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period.") (citations and internal quotations omitted). Furthermore, Plaintiffs' Complaint fails to specify particular dates or circumstances regarding the requested loan modification and does not articulate how Defendants' conduct with respect to the requested loan modification was discriminatory in nature. Finally, as in *Stokes*, this is not a case involving instances of alleged discrimination against multiple plaintiffs. In these circumstances, the continuing violation doctrine has no applicability, and Plaintiffs' FHA claims based on the 2005 loan origination must be dismissed.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, courts "should freely give leave [to amend pleadings] where justice so requires." "Although such motions should be granted liberally, a district court may deny leave if amending the complaint would be futile—that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)

(quoting *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007)). Given the statute of limitations, amendment of Plaintiffs' FHA claims based on the 2005 loan origination would be futile. *See, e.g.*, *Vega v. American Home Mortg. Serv., Inc.*, No. CV-10-2087-PHX-NVW, 2011 WL 317652, at *3 (D. Ariz. Feb. 1, 2011) ("To the extent Plaintiff's claims regarding her inability to obtain a loan modification stem from any unlawful action related to the loan's origination, those claims would . . . likely be time-barred."). However, it is conceivable that Plaintiffs may be able to set forth a cognizable FHA claim regarding Defendants' conduct with respect to the requested loan modification. *See, e.g.*, *Mejia v. EMC Mortg. Corp.*, No. CV 09-4701 (CAS), 2011 WL 2470060, at *4 n.3 (C.D. Cal. June 16, 2011) (noting that to the extent plaintiffs can allege that defendant improperly denied them a loan modification on the basis of race, such allegations could be sufficient to withstand a motion to dismiss their FHA claim). Accordingly, Plaintiffs' Motion for Leave to Amend will be granted-in-part. Should Plaintiffs attempt to set forth an FHA claim based on the requested loan modification, they must specify the timing and circumstances regarding the modification and explain how Defendants' conduct with respect to the modification was discriminatory.

  B.  <u>Equal Opportunity Credit Act</u>

The ECOA "contain[s] broad anti-discrimination provisions that 'make it unlawful for any creditor to discriminate against any applicant with respect to any credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age.'" *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 202 (4th Cir. 2002) (quoting 15 U.S.C. § 1691(a)(1)). The ECOA currently provides that no civil action shall be brought "later than five years after the date of the occurrence of the violation." 15 U.S.C. § 1691e(f). Until July 21, 2011, however, the ECOA provided that no action could be brought later than two years from the date of the

occurrence of the violation. *See Stokes*, 2012 WL 527600, at *7 n.4 (citing Pub. L. No. 111-203, § 1085(7) (July 21, 2010)). "[A]s a general principle, claims that would have expired under the previous two-year statute of limitations cannot retroactively be revived." *Stokes*, 2012 WL 527600, at *7 n.4.

Whether the two-year or five-year statute of limitations were to apply, Plaintiffs' EOCA claims relating to the origination of the 2005 loan are time-barred. *See id.* at *7 (dismissing EOCA claim where, at the time of the loans, plaintiff "was aware of her alleged injury because all aspects of the discriminatory subprime lending practices that she alleges as the basis of her cause of action had occurred by that time, overtly, to her directly"); *see also Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1162 (4th Cir. 1991) ("Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action.") (citations omitted); *Coulibaly*, 2011 WL 3476994, at *10 (statute of limitations analysis for ECOA identical to that of FHA). Accordingly, Plaintiffs' ECOA claims based on the origination of the 2005 loan must be dismissed.

As with the FHA claims, however, the Court will grant Plaintiffs leave to amend their ECOA claims in relation to the requested loan modification. Courts in this District have entertained such claims where they are properly pled. *See, e.g.*, *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11-3758, 2013 WL 247549, at *8-9 (D. Md. Jan. 22, 2013). Such claims must at least specify the timing and circumstances regarding the requested loan modification and explain how Defendants' conduct with respect to the loan modification was discriminatory.

    C.    <u>Maryland Consumer Protection Act</u>

Plaintiffs claim that Defendants engaged in the following unfair or deceptive trade practices in violation of the MCPA: "False, falsely disparaging, or misleading oral or written

9

statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," MD. CODE, COM. LAW § 13-301(1); and "[f]ailure to state a material fact if the failure deceives or tends to deceive," *id.* § 13-301(3). *See* Doc. No. 1 ¶ 50. In Maryland, "[a] civil action at law shall be filed within three years from the date it accrues." MD. CODE, CTS. & JUD. PROC. § 5-101; *see also Master Fin., Inc. v. Crowder*, 972 A.2d 864, 872 (Md. 2009) (applying three-year statute of limitations to claims brought under the MCPA). The Court of Appeals of Maryland has held that the discovery rule generally applies to a cause of action brought under § 5-101 and that "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981).

As with their FHA and ECOA claims, Plaintiffs' MCPA claims are time-barred to the extent they rely on Defendants' discriminatory and predatory conduct in the origination of the 2005 loan. The events giving rise to their MCPA claims—Defendants' alleged targeting of Plaintiffs for a subprime loan despite Plaintiffs' strong credit score, Defendants' advertising of the loan, and the closing of the loan—all occurred in or before May 2005. Furthermore, Plaintiffs had knowledge of Defendants' alleged deception with respect to the loan rates and their resulting injury by June 2005. Doc. No. 1 ¶¶ 16, 48. Accordingly, Plaintiffs reasonably should have known of the wrong by June 2005, and their MCPA claims are time-barred. *See, e.g.*, *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 986-87 (D. Md. 2002); *King v. Ameriquest Mortg. Co.*, No. PJM 09-977, 2009 WL 3681688, at *2 (D. Md. Oct. 30, 2009); *Porter v. GreenPoint Mortg. Funding, Inc.*, No. DKC 11-1251, 2011 WL 6837703, at *3-4 (D. Md. Dec. 28, 2011). Plaintiffs argue that they are inexperienced laypersons and that the limitations period should not run until they became aware of Defendants' illegal conduct. However,

"[k]nowledge of facts, . . . not knowledge of their legal significance, starts the statute of limitations running." *Miller*, 224 F. Supp. 2d at 986. For these reasons, Plaintiffs' MCPA claims will be dismissed.

Plaintiffs' MCPA claims appear limited to the origination of the 2005 loan, and there is no indication that Plaintiffs intended to state an MCPA claim for Defendants' conduct related to the requested loan modification. In the interests of justice, however, Plaintiffs will be granted leave to amend their pleadings so that they may articulate a plausible MCPA claim related to the requested modification, if such a claim exists. To the extent such a claim sounds in fraud, it must be pled with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for failure to state a claim will be **GRANTED-IN-PART**, and Plaintiffs' Motion for Leave to Amend will be **GRANTED-IN-PART**. A separate Order follows.

 

___June 21, 2013__                                                                          /s/
     Date                                                             Alexander Williams, Jr.
                                                                      United States District Judge